IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | **COMPLAINT** |
| **AQUA AMERICAN, INC. d/b/a AQUA RESOURCES INC.**, | ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) ) | |

NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Henry C. Blue, Jr. ("Blue") and a class of other similarly aggrieved black employees, who were affected by such practices. As alleged with greater particularity in paragraphs 11 and 12, the U.S. Equal Employment Opportunity Commission (the "EEOC") alleges that Defendant Aqua America, Inc. d/b/a Aqua Resources, Inc. ("Defendant Employer") discriminated against Blue and other similarly aggrieved black employees by subjecting them to race-based harassment—including slurs such as "nigger" and "boy"—thereby creating and maintaining a hostile work environment because of their race, black, in violation of Title VII. Defendant also violated Title VII by retaliating against Blue by discharging him for complaining about racial harassment.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and

1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, Aqua America, Inc. d/b/a Aqua Resources, Inc. ("Defendant Employer"), has continuously been a Pennsylvania corporation doing business in the Commonwealth of Pennsylvania and the census-designated place of Bryn Mawr, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Henry C. Blue, Jr. ("Blue") filed a charge with the Commission alleging violations of Title VII by Defendant Employer.

7. On August 8, 2017, the Commission issued to Defendant Employer a Letter of

Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

9. On August 29, 2017, the Commission issued to Defendant Employer a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Since at least January 2015, Defendant Employer has engaged in unlawful employment practices out of Defendant Employer's various facilities and job sites, including its Bear, Delaware facility and job sites, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Blue, and a class of similarly aggrieved black employees, to a hostile work environment consisting of ongoing severe or pervasive harassment because of their race, black. These unlawful practices include but are not limited to the following:

   a) Blue was employed with Defendant Employer as a Foreman and/or Operator from January 2015 until May 2016.

   b) From at least January 2015, John Dotson ("Dotson"), a Defendant Employer Superintendent frequently called Blue, and other black employees, "nigger" and "monkey." Dotson referred to the black crew members as "boy" and "monkey," and he further used terms such as "nigger up" and "nigger rigged" to refer to work-related vehicles getting dirty or messed up. These terms were used in Blue's

and all employees' presence, including black employees. Dotson's use of racial slurs was open and apparent when at Defendant Employer's facilities and on job sites. Dotson did not use these terms to refer to or address white employees.

c) As a Superintendent, Dotson had the authority to take employment actions against Blue and other employees, including assigning their jobs, recommending their terminations, and rating their performance, which directly impacted their bonuses and raises.

d) From at least January 2015 until March 2016, Zachery Bibb ("Bibb"), a Defendant Employer Foreman, frequently referred to Blue as a "nigger," told Blue that his crew was "getting a little dark" (referring to the addition of a new black crew member), and that Blue's "black ass" would not work there if Blue did not do what he said. Bibb also referred to black male employees as "boy." Bibb's use of racial slurs was open and apparent at Defendant Employer's facilities and on job sites.

e) From at least January 2015 until his termination around February 2017, crew member and later Foreman John Vanderhoot ("Vanderhoot") referred to Blue and other black employees as "nigger," and "fucking lazy nigger." Around June 2015, Vanderhoot, assigned to work for Blue, told Blue that "no nigger will ever be my boss." Vanderhoot's use of racial slurs was open and apparent at Defendant Employer's facilities and on job sites.

f) Defendant Employer failed to make Blue aware of any policy or process by which employees could complain to Defendant Employer's management about race-based harassment. Nor did Defendant Employer provide to Blue training or

    guidance for any harassment complaint procedure. Despite the absence of any such complaint procedure, Blue complained about the racial harassment to Superintendent Jeremie Bibb (who was also Zachery Bibb's brother) about Zachery Bibb's harassing behavior. In response, Jeremie Bibb laughed and took no action to correct the racial harassment.

g) Around September 2015, Blue also complained to Director of Operations Frank Impagliazzo, regarding Bibb's racial epithets. Impagliazzo stated that he would take care of it, yet the racial harassment continued.

h) Because the racial harassment continued, around February 2016, Blue complained to then Director of Operations Allen Ross, about Vanderhoot's racial remarks. In response, Respondent removed Vanderhoot from Blue's crew and promoted him to Foreman. Defendant Employer thereafter demoted Blue to an Operator to work under Vanderhoot. Blue complained to Ross on at least three additional occasions about racist comments.

i) In early May 2016, after being addressed by Dotson as "boy", Blue asked Dotson to stop using that term to refer to him or to his crew.

j) Throughout the period of harassment experienced by Blue, other employees also complained about racial harassment to Defendant Employer, including human resources. Despite these numerous complaints, the racial harassment continued.

12. In 2016, Defendant engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discharging Blue in retaliation for engaging in a protected activity, namely, complaining about racial harassment. These unlawful practices include but are not limited to the following:

    a) As set forth in paragraph 11, Blue complained about racial harassment on numerous occasions to Defendant Employer.

    b) Approximately one week after his most recent complaint directly to Dotson, Dotson ordered Blue to turn in his company credit card and leave the premises.

    c) The following week Defendant Employer terminated Blue.

    d) Blue's termination was the result of his protected activity.

    e) At all times throughout his employment, Blue performed his job well.

13. The effect of the practices complained of in paragraph 11 above has been to deprive Blue, and a class of similarly aggrieved black employees, of equal employment opportunities and otherwise adversely affect their status as employees because of their race, black.

14. The effect of the practices complained of in paragraph 12 above has been to deprive Blue of equal employment opportunities and otherwise adversely affect his status as an employee because of his engaging in protected activity.

15. The unlawful employment practices complained of in paragraphs 11 and 12 above were and are intentional.

16. The unlawful employment practices complained of in paragraphs 11 and 12 above were and are done with malice or with reckless indifference to the federally protected rights of Blue, and a class of similarly aggrieved black employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it,

from discriminating against its employees on the basis of race by subjecting them to a hostile work environment.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Blue, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole Blue and a class of similarly situated black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 11 and 12 above, in amounts to be determined at trial.

E. Order Defendant Employer to pay Blue and a class of similarly situated black employees punitive damages for its malicious and reckless conduct, as described in paragraphs 11 and 12 above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

James Lee
Acting General Counsel

Gwendolyn Young Reams
Associate General Counsel

*s/ Debra Lawrence*
Debra Lawrence
Regional Attorney

*s/ Maria Luisa Morocco*
Maria Luisa Morocco
Supervisory Trial Attorney

Jennifer L. Hope
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19146
(215) 440-2841